

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00879-CV

**IN THE INTEREST OF J.G.** and O.G., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00949
Honorable Raul Perales, Judge Presiding

Opinion by:      Irene Rios, Justice

Sitting:      Irene Rios, Justice
      Liza A. Rodriguez, Justice
      Lori I. Valenzuela, Justice

Delivered and Filed: March 27, 2024

AFFIRMED

Appellants Father and Mother appeal the trial court's order terminating their parental rights

to their children, J.G. and O.G.[1]  Father and Mother challenge the sufficiency of the evidence

supporting the trial court's finding that termination was in the children's best interests.  We affirm.

### BACKGROUND

The Department of Family and Protective Services ("the Department") became involved

in the underlying case in February 2022, when the Department received a referral alleging Mother

was abusing illegal drugs.  The children remained in the home while the family participated in

family-based safety services ("family-based services").  However, Father did not engage in family-

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to the children using their initials or as "the children."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

based services, and the Department received another referral in May 2022 alleging domestic violence in the home after Father was arrested for aggravated assault on a member of Mother's family.

On June 14, 2022, the Department filed a petition seeking temporary managing conservatorship of the children and termination of Father's and Mother's parental rights. On August 30, 2023, the trial court held a bench trial. The trial court heard testimony from: Tilisa Fields, the Department's caseworker; Mother; and Father.

On September 5, 2023, the trial court signed an order terminating Father's and Mother's parental rights to the children. The trial court terminated Father's and Mother's parental rights based on statutory grounds (E), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(E), (O), (P). The trial court also found it was in the children's best interests to terminate Father's and Mother's parental rights. *See id.* § 161.001(b)(2). Father and Mother appeal.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v.*

*Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

## BEST INTEREST

Father and Mother argue the evidence is legally and factually insufficient to support a finding that termination of their parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2]

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

*See id.* § 263.307(b).  We also consider the *Holley* factors.[3]  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *Id.*  In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent.  *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest.  *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest).  "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence."  *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).  "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."  *Id.*

In determining the best interest of a child, two factors the trial court considers are "whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; [and] . . . whether there is a history of substance abuse by the child's family or others who have access to the child's home[.]"  TEX. FAM. CODE ANN. §§ 263.307(b)(7), (8).

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

"[E]ndangering conduct is not limited to actions directed towards the child." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

Here, the children came into the Department's care due to concerns of Mother's illegal drug use and concerns of domestic violence in the home. Mother was arrested and charged with possession of a controlled substance with the intent to deliver. The Department attempted to leave the children with the parents while the family participated in family-based services. However, Father did not engage in family-based services and was arrested in May 2022 for aggravated assault against a member of Mother's family. The children were present during each parent's arrest. *See In re S.L.W.*, No. 04-22-00425-CV, 2023 WL 28451, at *5 (Tex. App.—San Antonio Jan. 4, 2023, pet. denied) (mem. op.) (alteration omitted) ("A parent's criminal activities and history are relevant to a best-interest analysis."). Father was on federal probation when he was arrested for aggravated assault, and he was incarcerated to serve out the remainder of his federal sentence following his arrest. Mother's criminal charge is still pending, and she was arrested again in May 2023 for failure to appear in court.

*A. Father*

To address the concerns that led to removal, the Department created a service plan for Father. According to his service plan, Father was required to show proof of stable housing and employment, complete a drug assessment and follow all recommendations, pass random drug tests, participate in individual counseling, complete a psychological evaluation and follow all recommendations, and participate in and complete parenting classes and classes on domestic violence for offenders. Tilisa Fields, the Department's caseworker, testified she went over the

service plan with Father, Father understood what his services required, and Father signed the plan. Father told Fields he did not agree with some of the services.

Father was incarcerated from May 2022 to March 2023, serving the remainder of his federal sentence following the domestic violence incident where he was charged with aggravated assault. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). "A parent's lengthy absence from a child's life during [the child's] early years due to incarceration creates an 'emotional vacuum' that threatens the child's emotional well-being and indicates that the parent-child relationship is not a proper one." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation marks and alterations omitted); *see also In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.) ("Criminal conduct, prior convictions, and incarceration affect[] a parent's life and his ability to parent, thereby subjecting his child[ren] to potential emotional and physical danger."). Father was unable to visit the children and did not participate in his services while he was incarcerated.

Fields testified Father has not provided her with a paystub showing proof of stable employment. Father told Fields that he works as a tattoo artist and cannot provide a paystub because he is paid "under the table" in cash. Father testified that he has worked as a tattoo artist for approximately sixteen years and started up again when he was released from prison in March 2023. Father stated he earns approximately $850 per week.

The trial court heard contradicting testimony on whether Father has stable housing. Father testified he lives with his mother. Fields, on the other hand, testified that Father has had three different addresses in the five months since his release. According to Fields, Father's most recent

address is a motel. The trial court could have discredited Father's testimony that he lives with his mother and, instead, was entitled to believe Fields's testimony that Father was currently living in a motel and has not shown proof of stable housing since his release from prison. *See HealthTronics, Inc.*, 382 S.W.3d at 582 (holding the trial court in a bench trial is the sole judge of the credibility of witnesses and the weight to be given their testimony).

Father completed the drug assessment, and it was recommended that Father engage in outpatient drug treatment. However, Father was discharged from outpatient drug treatment for lack of engagement. Father submitted to the first drug test requested by the Department but has not submitted to any other drug tests since. In a written order, the trial court ordered both parents to submit to a drug test at the Bexar County courthouse on August 9, 2023. Father failed to appear for this drug test because he claimed he did not have an identification card and did not think he would be allowed to submit to the test without an identification card. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs.").

Fields testified Father was unsuccessfully discharged from his first referral for individual counseling; however, Fields and Father both testified that within the last month Father was actively engaged with his second referral for individual counseling. Father testified he enjoys and believes he is benefitting from the counseling sessions.

Father did not complete his parenting classes or his classes addressing domestic violence for offenders. Exposure to domestic violence was one of the Department's primary concerns when it removed the children. Despite the children witnessing domestic violence between the parents, Father told Fields he didn't need to take the domestic violence classes and they wouldn't make

him a better parent. *See In re L.M.W.*, No. 04-22-00577-CV, 2023 WL 2357706, at *7 (Tex. App.—San Antonio Mar. 6, 2023, pet. denied) (mem. op.) (holding unresolved domestic violence between the parents supports a trial court's finding that termination of parental rights is in the child's best interest). "A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being." *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) ("Evidence of the parents' history of domestic violence supports the trial court's best[-]interest[] findings."). The trial court heard testimony that domestic violence between the parents occurred in the children's presence. *See J.O.A.*, 283 S.W.3d at 345 ("[E]ndangering conduct is not limited to actions directed towards the child."); *see also In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding exposure to domestic violence supports the trial court's finding that termination is in the child's best interest even when the child is not the intended victim of the violence). The trial court also heard testimony that Father assaulted a member of Mother's family at the apartment complex where the children were living. Further, Fields testified that Father would get angry and become aggressive in his demeanor when she encouraged him to do the services he did not want to do. The trial court could have reasonably concluded that Father's refusal to address his domestic violence and anger issues poses an emotional and physical danger to the children. *See A.H.*, 2015 WL 7565569, at *7.

Fields testified that Father only attended about half of his visits with the children. *See In re R.B.*, 200 S.W.3d 311, 316–17 (Tex. App.—Dallas 2006, pet. denied) (signifying a parent's missed visits serve as an example of acts or omissions indicating termination is in the children's best interests). Fields did not believe the children have bonded with Father, but she stated Father's relationship with the children has improved and they are now familiar with him. While Father was appropriate during most of the visits, there was one incident where Father attempted to feed the

children Cheetos early in the morning. When the Department suggested Father bring different food for a visit that early, Father responded that "he didn't need anyone to tell him how to take care of his kids." *See* TEX. FAM. CODE ANN. §§ 263.307(b)(10), (12) (stating whether a parent demonstrates adequate parenting skills and a parent's willingness and ability to cooperate with and facilitate an appropriate agency's close supervision as best-interest factors considered by the trial court).

Although Father had been out of prison since March 2023—five months before trial—he did not reengage in counseling until the month before trial and did not take his psychological evaluation until the day before trial. Father admitted that he only started some of his services the week of trial. When pressed on why he delayed his services, Father stated: "I still got a personal life on my side to deal with" and that he is trying to fit his services in his schedule. Father further stated: "I'm fresh out [of prison]. It's not going [to] happen overnight within a month, . . . I just need time." Based on this testimony, the trial court could have reasonably concluded that Father is unwilling to prioritize the needs of his children over his own desires, and that Father's unwillingness to timely engage in his services could reflect an unwillingness to timely attend to the children's needs. *See id.* § 263.307(b)(11) (stating "the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time" is a best-interest factor considered by the trial court).

Father asked the court to focus on his recent improvements rather than looking at his past mistakes. While Father's recent engagement in services is not without merit, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices." *J.O.A.*, 283 S.W.3d at 346. Accordingly, the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interests.

*B. Mother*

To address the concerns that led to removal, the Department also made a service plan for Mother. According to her service plan, Mother was required to show proof of stable housing and employment, complete a drug assessment and follow all recommendations, pass random drug tests, participate in individual counseling, complete a psychological evaluation and follow all recommendations, and participate in and complete parenting classes and classes on domestic violence for victims. The trial court heard testimony that Mother has only successfully completed her psychological evaluation and drug assessment.

"Evidence of a parent's unstable lifestyle can . . . support a factfinder's conclusion that termination is in the child's best interest." *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Fields testified Mother does not have stable housing or employment. Mother conceded she does not have stable employment and has struggled to find a job, but she claimed to have a home. However, the trial court could have disbelieved Mother's testimony regarding her home and found Fields's testimony more credible. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony, and we defer to the factfinder on witness credibility issues). While Mother testified that she wants her children back, she stated: "I know that right now I'm not . . . stable for them."

One of the primary concerns prompting the Department to remove the children was Mother's illegal substance abuse. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger"). "Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's

parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). Mother completed her drug assessment, and it was recommended that she engage in outpatient drug treatment. The trial court heard testimony that Mother was in her third attempt at outpatient drug treatment, and she has not successfully completed treatment despite starting eight months before trial. *See* TEX. FAM. CODE ANN. § 263.307(b)(11). Although Mother submitted three drug tests from her outpatient treatment, Fields testified that Mother has never drug tested for the Department. *See A.M.L.*, 2019 WL 6719028, at *4 ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). As mentioned above, the trial court ordered both parents to take a drug test at the Bexar County courthouse. Although Mother was at a status hearing the day she was ordered to take her drug test, Mother failed to submit to this test because she claimed to have COVID-19. Mother never made up the drug test.

When making a best interest determination, the trial court considers "the willingness and ability of the [parent] to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision[.]" TEX. FAM. CODE ANN. § 263.307(b)(10). At the time of trial, Mother had not completed individual counseling, parenting classes, or her domestic violence classes. Mother's minimal effort to engage in or complete her services indicates an unwillingness to effect positive environmental and personal changes within a reasonable period of time. *See id.* § 263.307(b)(11). Her unwillingness to engage in her domestic violence classes is particularly significant considering the children's prior exposure to domestic violence. *See id.* § 263.307(b)(12)(E) (providing a best-interest factor is "whether the child's family demonstrates adequate parenting skills, including providing the child . . . with . . .

protection from repeated exposure to violence even though the violence may not be directed at the child").

The trial court also heard testimony that Mother still has a pending charge for possession of illegal substances with the intent to deliver and she was incarcerated during the pendency of the case for failure to appear in court. The trial court was permitted to "consider the instability that results from incarceration in its best[-]interest analysis" and how such incarceration "can negatively impact a child's living environment and emotional well-being." *J.M.G.*, 608 S.W.3d at 56.

There was evidence indicating the children have a bond with Mother, that Mother deeply cares for the children, Mother did not miss visits, and she attended medical appointments with the children. However, the trial court could have nevertheless formed a firm belief or conviction that termination was in the children's best interests because of Mother's unwillingness to engage in services and address the issues that led to the children's removal. *See In re N.M.H.*, No. 04-18-00264-CV, 2018 WL 3998598, at *4–5 (Tex. App.—San Antonio Aug. 22, 2018, pet. denied) (mem. op.) (affirming the trial court's termination order even though the children had a bond with Mother).

## C. The Children

The children have been placed with the same foster family since September 12, 2022. Both children have been diagnosed with autism and are currently engaged in speech therapy and occupational therapy. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (listing "the child's age and physical and mental vulnerabilities" as a factor to be considered by the trial court in determining the child's best interest). According to Fields, the foster parents are meeting all the children's medical needs. *See S.D.*, 980 S.W.2d at 764 (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs"). Mother

recognized the children are "good" and "comfortable" with their foster placement, have a bond with the foster parents, and "are real close to them."

In contrast, Fields testified she does not believe the parents have made the necessary changes to address the Department's concerns leading to removal. She further opined that she does not believe either parent has shown they can take care of the physical and emotional needs of the children or that they can provide a safe and stable environment for the children.

The trial court heard ample evidence that the children were removed because of concerns with Mother's illegal drug use and domestic violence between Father and Mother. The testimony at trial showed that neither Father nor Mother had addressed these concerns and have made minimal effort in their services. Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's and Mother's parental rights were in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

## CONCLUSION

We affirm the trial court's order terminating Father's and Mother's parental rights to the children.

Irene Rios, Justice

- 14 -